IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| NORTHWEST REGIONAL COUNCIL OF THE INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL & TRANSPORTATION WORKERS, LOCAL 16,<br><br>    Plaintiff,<br> v.<br><br>BRAWN MECHANICAL CORPORATION,<br><br>    Defendant. | Case No.: 3:24-cv-01219-AN<br><br>OPINION AND ORDER |

    Plaintiff Northwest Regional Council of the International Association of Sheet Metal, Air, Rail & Transportation Workers, Local 16 ("Local 16" or the "Union") filed this action against defendant Brawn Mechanical Corporation ("Brawn Mechanical"), seeking to confirm an arbitration award pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. On November 20, 2024, plaintiff filed a motion for judgment on the pleadings. After reviewing the parties' filings, the Court finds this matter appropriate for decision without oral argument. Local R. 7-1(d). For the reasons stated below, plaintiff's motion is GRANTED.

## LEGAL STANDARDS

### A. Judgment on the Pleadings

    "A district court must grant a motion for judgment on the pleadings when there is no issue of material fact, and the moving party is entitled to judgment as a matter of law." *Unite Here Loc. 30 v. Sycuan Band of the Kumeyaay Nation*, 35 F.4th 695, 700 (9th Cir. 2022) (citing *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009)). "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147,

1155 (9th Cir. 2015) (quoting *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012)). The court must accept all allegations of fact by the non-moving party as true and construe those allegations in the light most favorable to the non-moving party. *Id.* (citing *Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989)).

If matters outside of the pleadings are presented to and considered by the court, a motion for judgment on the pleadings "must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, a court may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice" without converting the motion into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999). A court may also consider documents on which the complaint necessarily relies if the parties do not dispute the authenticity of the documents. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

**B.     Stay of Proceedings**

A district court possesses "inherent authority to stay federal proceedings pursuant to its docket management powers." *Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 842 (9th Cir. 2023). A court "may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) (citation omitted). The decision to stay proceedings "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).

The Ninth Circuit has "identified three non-exclusive factors courts must weigh when deciding whether to issue a docket management stay: (1) 'the possible damage which may result from the granting of a stay'; (2) 'the hardship or inequity which a party may suffer in being required to go forward'; and (3) 'the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law.'" *Ernest Bock*, 76 F.4th at 842 (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)).

## BACKGROUND

A.  **Factual History**

Plaintiff and defendant were bound by the terms of a collective bargaining agreement ("CBA") between plaintiff and the Northwest Mechanical Sheet Metal Contractors' Association ("NMSMCA"), which was effective between July 1, 2020, and June 30, 2023. *See* Compl. ("Pet."), ECF [1], ¶ 6 & Ex. A ("CBA"); Answer, ECF [9], ¶ 5.

Article XVI, Section 16.01 provides that the CBA "shall continue in force from year to year thereafter unless written notice of reopening is given not less than ninety (90) days prior to the expiration date." CBA 24 (all references to ECF numbering). Article XVI, Section 16.04 further provides that defendant "hereby waives any right it may have to repudiate this [CBA] during the term of this [CBA] or during the term of any extension, modification or amendment to this [CBA]." *Id.*

Article X of the CBA details the Grievance Procedure. Article X, Section 10.05 provides that a Local Joint Adjustment Board ("LJAB") was "empowered to render such decisions and grant such relief to either party as [it] deem[s] necessary and proper, including award of damages or other compensation." *Id.* at 16. Article X, Section 10.02 provides that "[e]xcept in the case of a deadlock, a decision of a[n] [LJAB] shall be final and binding." *Id.* at 15. Article X, Section 10.06 provides that, in the event of noncompliance with an LJAB decision, "a local party may enforce the award by any means including proceedings in a court of competent jurisdiction in accord with applicable state and federal laws" and that "[i]f the party seeking to enforce the award prevails in litigation, such party shall be entitled to its costs and attorney's fees in addition to such other relief as is directed by the courts." *Id.* at 17. Article X, Section 10.01 provides that "[t]o be valid, grievances must be raised within thirty (30) calendar days following the occurrence giving rise to the grievance[.]" *Id.* at 15.

On or about January 13, 2023, defendant notified plaintiff by certified letter that it was "withdrawing and canceling any prior consent or agreement for NMSMCA . . . to represent it in any way with respect to any contract renewal negotiations or any other negotiations with Local 16 or any other union, effective immediately." Decl. Michael A. Cox Supp. Resp't Opp'n Pet'r Mot. J. Pleadings ("Cox Decl."),

3

ECF [23], Ex. 2, at 1.

Defendant received a letter from plaintiff dated March 17, 2023, giving notice that plaintiff wished to reopen negotiations on the CBA. *Id.* at Ex. 3. On March 27, 2023, defendant sent a letter to plaintiff notifying plaintiff that defendant was repudiating the CBA upon its expiration. Pet. ¶ 11; Answer ¶ 6. Defendant did not seek or agree to negotiate a new CBA with plaintiff. Pet. ¶ 11; Answer ¶ 6.

On June 29, 2023, plaintiff sent defendant an email seeking to schedule dates to negotiate a new contract. Cox Decl. Ex. 5. The email did not challenge defendant's repudiation of the CBA or argue that defendant did not have the right to repudiate the CBA. *Id.* On July 1, 2023, defendant reiterated that it had repudiated the CBA and would not bargain over a successor agreement. Pet. ¶ 11; Answer ¶ 6.

On August 8, 2023, plaintiff filed a grievance with defendant. Pet. ¶ 12 & Ex. C. The grievance stated that "[o]n or about Tuesday, July 11, at a project located at 1001 Molalla Ave. in Oregon City, a Local 16 representative witnessed Brawn Mechanical performing HVAC service work with at least two non-members in violation of at least Articles III, IV, and V of the [CBA]." Pet. Ex. C at 1.

On or about November 9, 2023, defendant's employees voted to decertify the Union. Pet. ¶ 13; Answer ¶ 8. On or about November 20, 2023, the National Labor Relations Board ("NLRB") recognized the validity of the decertification vote. Pet. ¶ 13; Answer ¶ 8.

On May 22, 2024, the LJAB met to consider the grievance between plaintiff and defendant. Pet. ¶ 14; Answer ¶ 9. Defendant did not attend the proceedings but sent a letter to the LJAB, asserting that the LJAB lacked jurisdiction. Pet. ¶ 14; Answer ¶ 9.

On May 24, 2024, the LJAB issued a unanimous decision ("LJAB Decision"). The LJAB determined that "all procedural requirements had been met, that the grievance was timely, and was properly before the [LJAB] for consideration." Pet. Ex. D, at 1. Based on the record and testimony presented, and considering defendant's letter stating its belief that the contractual relationship with plaintiff had ended, the LJAB found that defendant's obligation to the CBA continued until defendant decertified the Union on November 20, 2023. *Id.* The LJAB found that "Brawn Mechanical breached Article III section 3.01, Article IV Section 4.01, and Article V section 5.01 of the [CBA] by employing workers who were not a part of the

4

union bargaining unit, and by refusing to hire union members or enforce the Union Security Clause." Pet. ¶ 15 & Ex. D, at 1; *see* Answer ¶ 9. The LJAB further held that "[a]ccording to the records provided by Brawn, the improperly hired and/or employed workers worked a total of 1,959.5 hours between July 1st, 2023[,] and November 20th, 2023." Pet. Ex. D, at 1. The LJAB directed that defendant "issue one check payable to . . . Local 16 in the amount of $93,754.48," and "further award[ed] interest of 9% per annum paid on this amount, with accrual beginning on 5/24/2024, if Brawn Mechanical fails to pay these damages by 6/23/2024." *Id.* at 1-2.

On July 5, 2025, plaintiff sent defendant a letter demanding payment of the damages and interest awarded to it by the LJAB Decision. Pet. ¶ 18 & Ex. E; Answer ¶ 2. To date, defendant has not paid the damages and interest awarded to plaintiff by the LJAB Decision. Pet. ¶ 19; Answer ¶ 2.

**B.    Procedural History**

Plaintiff filed a petition to confirm the arbitration award on July 29, 2024. On November 20, 2024, plaintiff moved for judgment on the pleadings. Mot. J. Pleadings ("Pl. Mot."), ECF [12]. In response, defendant filed an opposition to the instant motion and requested that this Court stay its consideration pending a decision on summary judgment in another case in this district before Magistrate Judge Jeff Armistead, *Trustees of the Oregon Sheet Metal Workers Master Retirement Trust v. Brawn Mechanical Corp.* ("*Trustees*"), No. 3:24-cv-00594-AR. Resp. Opp'n Mot. J. Pleadings ("Def. Resp."), ECF [22], at 1 n.1.

## DISCUSSION

**A.    Request for Stay**

As an initial matter, defendant requests this Court to stay consideration of the instant motion pending Judge Armistead's decision on summary judgment in the *Trustees* case. Defendant seeks a stay to "avoid any possibility of inconsistent rulings" on the issue of repudiation in the two actions. Def. Resp. 1 n.1. Although the two cases may involve largely the same facts, the *Trustees* case is an ERISA action regarding unpaid contribution amounts. Plaintiff is not a party in the other case, nor has it had an opportunity to submit briefing regarding the pending motion for summary judgment. Moreover, the LJAB

has already considered and rejected defendant's arguments regarding its procedural defenses, and defendant now seeks to collaterally attack the LJAB Decision in two different proceedings in this Court.

Because there is "a fair possibility" that a stay would cause damage to plaintiff, defendant "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. Defendant does not articulate any hardship or inequity that it will suffer from having to continue to litigate this case. Additionally, there does not appear to be any benefit in terms of judicial efficiency because the two proceedings involve unrelated substantive questions; defendant merely raises an identical defense to collaterally attack the arbitration award in both cases. Accordingly, the Court declines to stay this case pending resolution of the motion for summary judgment in the *Trustees* case.

**B.     Consideration of Extraneous Materials**

In support of its response, defendant includes a declaration by defendant's president Mark Waggy ("Waggy") that was filed in the *Trustees* case, as well as the exhibits filed with that declaration. *See* Cox Decl. 3-6. Those exhibits consist of: (1) the entirety of the CBA between plaintiff and NMSMCA; (2) the January 13, 2023, letter from defendant to plaintiff that defendant was withdrawing and canceling any further representation of defendant by NMSMCA and a February 3, 2023, email from a Thomas Goodhue to defendant confirming receipt of the withdrawal notice; (3) the March 17, 2023, letter from plaintiff to defendant giving notice of reopening; (4) the March 27, 2023, letter from defendant to plaintiff responding to plaintiff's March 17, 2023, letter; (5) the June 29, 2023, email from plaintiff to defendant seeking to schedule dates for negotiating a new CBA and the July 1, 2023, email from defendant to plaintiff stating that the CBA had expired and that defendant would be taking hiring actions inconsistent with the CBA; (6) a June 2023 contribution report in which defendant notified the Trust Funds that defendant's account was to be made inactive; (7) the August 8, 2023, letter from plaintiff to defendant grieving defendant's use of non-union labor; and (8) a February 5, 2024, letter from the Trust Funds to defendant requesting payment of claimed contribution underpayments from May 1, 2021, to November 19, 2023.

The Court considers Exhibits 1, 2, 3, 4, 5, and 7 to the Cox declaration but declines to convert this motion to a motion for summary judgment by considering the remainder of the declaration.

Exhibits 1, 4, and 7 to the Cox declaration are identical to Exhibits A, B, and C, respectively, to the petition. The Court finds that Exhibits 2, 3, and 5 are also incorporated by reference in the petition. However, Exhibits 6 and 8 reference contribution payments and do not appear to be relevant to any of the issues in this case. Additionally, any notice to the Trust Funds that defendant was making its account inactive is not relevant to defendant's purported repudiation of the CBA.

C.     **Jurisdiction of the LJAB**

Turning to the substance of the instant motion, the parties' dispute concerns whether the LJAB had jurisdiction to decide a labor dispute under a CBA when defendant claimed to have repudiated the CBA. Plaintiff and defendant do not dispute the material facts; they only dispute the meaning and effect of their communications as to when the CBA was repudiated.

"[W]here a dispute exists over whether a contract with an arbitration clause has expired or been terminated, the proper initial inquiry for the court is whether the arbitration clause covers such disputes, not whether the termination clause means what [either party] says it means." *Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 v. Interstate Distrib. Co.*, 832 F.2d 507, 511 (9th Cir. 1987). "It is not [the court's] role to pass on the merits of the parties' respective positions regarding the meaning and effect of the letters under their [CBA]." *Id.* at 512 (citing *AT & T Techs. v. Comm'cns Workers of Am.*, 475 U.S. 643, 650 (1986)).

The Ninth Circuit has "set forth the general rule applicable in cases presenting questions relating to disputes over termination or repudiation of collective-bargaining agreements: '[W]hen the collective bargaining agreement contains a customary arbitration clause[,] acts of repudiation and other acts of termination must be submitted to arbitration.'" *Camping Constr. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1338 (9th Cir. 1990) (quoting *Interstate Distrib. Co.*, 832 F.2d at 511 n.4). "That rule applies whether the dispute between the parties is solely over termination or repudiation, or whether, as here, their disagreement over that question is a threshold issue that must be resolved before the underlying dispute can be reached." *Id.* Where a CBA contains an arbitration clause, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it

7

may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT & T Techs.*, 475 U.S. at 650 (citation omitted). Such a presumption is particularly applicable where an arbitration clause is broad, because "[i]n the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* (citation omitted).

Here, plaintiff's claim that defendant violated certain provisions of the CBA requires a threshold determination of whether defendant repudiated the CBA. Article X of the CBA provides that grievances "arising out of interpretation or enforcement of" the CBA that cannot be settled by the parties are to be decided by an LJAB. CBA 13. This constitutes a "customary" arbitration clause that provides for the arbitration of disputes relating to termination and repudiation. *See Int'l All. of Theatrical Stage Emp. & Moving Picture Technicians Loc. 720 v. InSync Show Prods., Inc.*, 801 F.3d 1033, 1036, 1042-43 (9th Cir. 2015) (applying *Camping* and *Interstate Distributor* to arbitration clause providing for arbitration of "claim[s] or allegation[s] by an employee in the bargaining unit or by the Union that the Employer has violated or is violating the provisions of this Agreement."); *Camping Constr.*, 915 F.2d at 1338 (citing *Interstate Distrib.*, 832 F.2d at 510 n.2) ("An agreement to arbitrate 'any grievance or controversy affecting the mutual relations of the [parties],' or, as here, an agreement to arbitrate 'any differences that may arise regarding the meaning and enforcement of this Agreement,' or any other broad arbitration clause, such as 'any dispute arising out of this Agreement,' ordinarily requires us to hold that the parties have provided for arbitration of disputes regarding termination[] and repudiation[.]"); *see also Taylor Sheet Metal, Inc. v. Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers Union, Loc. No. 16*, 774 F. App'x 384, 388 n.3 (9th Cir. 2019) (citing *Camping Constr.*, 915 F.2d at 1338) ("A 'customary' arbitration clause broadly provides that any dispute arising out of the agreement must be arbitrated.").

Defendant cites to *SEIU Local 121RN v. Los Robles Regional Medical Center*, 976 F.3d 849 (9th Cir. 2020), and *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), to argue that the Court must determine the threshold issue of repudiation. However, neither case supports defendant's position. In *SEIU*

*Local 121RN*, the Ninth Circuit addressed an issue of substantive arbitrability that arose in a motion to compel arbitration and whether the court or an arbitrator should make that determination. 976 F.3d at 860. It did not, however, address the arbitrability of a dispute over the termination or expiration of a CBA. *Id.* Indeed, the court specifically stated that "the arbitrability of a termination clause is obviously different than the arbitrability of the arbitration requirement itself." *Id.* at 859 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944-945 (1995)); *see also InSync*, 801 F.3d at 1042 (citing *Interstate Distrib.*, 832 F.2d at 510) (second alteration in original) ("In such a case [involving a dispute over termination or expiration], 'the real question [about the termination clause's meaning or interpretation] is one step removed from the issue of substantive arbitrability[.]'") Therefore, *SEIU Local 121RN* does not control the issues in this case. In *Morgan*, the United States Supreme Court considered whether an employer's litigation conduct, including its silence about the existence of an arbitration agreement, constituted a waiver of its right to compel arbitration under the Federal Arbitration Act. 596 U.S. at 417-19. However, the issue of waiver of the right to compel arbitration is not relevant to the parties' dispute in this case.

Neither *SEIU Local 121RN* nor *Morgan* addresses the arbitrability of disputes over repudiation; thus, they do not disturb the longstanding precedent that governs the Court's approach to this dispute. Because the CBA contains a customary arbitration clause that provides for the arbitration of disputes relating to repudiation, the threshold issue of repudiation here is a matter that must be submitted to arbitration. *See Camping Constr.*, 915 F.2d at 1338 (quoting *Interstate Distrib. Co.*, 832 F.2d at 511 n.4). Accordingly, the LJAB had jurisdiction to decide this threshold issue.

**D.     Confirmation of the Arbitration Award**

The LMRA confers on district courts jurisdiction over actions arising from a breach of a labor agreement. 29 U.S.C. § 185(a). "An employer violates the contract when it refuses to implement an arbitration award made in accordance with the parties' contractual grievance process." *Reg'l Loc. Union No. 846 v. Gulf Coast Rebar, Inc.*, 83 F. Supp. 3d 997, 1010 (D. Or. 2015).

A district court has jurisdiction to enforce an arbitration award entered pursuant to a CBA. *See Sheet Metal Workers Int'l Ass'n, Loc. 359 v. Madison Indus.*, 84 F.3d 1089, 1091 (9th Cir. 1990).

"Because federal labor policy strongly favors the resolution of labor disputes through arbitration, judicial scrutiny of an arbitrator's decision is *extremely* limited." *United Food & Com. Workers Int'l Union, Loc. 588 v. Foster Poultry Farms*, 74 F.3d 169, 173 (9th Cir. 1995), *as amended* (citation modified); *see also United Paper Workers Int'l Union v. Misco*, 484 U.S. 29, 36-37 (1987) ("The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator."). A court must confirm an arbitral award "[a]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Van Waters & Rogers, Inc. v. Int'l Bhd. of Teamsters Loc. Union 70*, 913 F.2d 736, 739 (9th Cir. 1990) (citing *Misco*, 484 U.S. at 37-38). The court's task "is to determine *whether* the arbitrator interpreted the collective bargaining agreement, *not* whether he did so correctly." *Haw. Teamsters & Allied Workers Union, Loc. 996 v. United Parcel Serv.*, 241 F.3d 1177, 1178 (9th Cir. 2001) (emphases in original).

There are three exceptions to this general rule of deference: "(1) when the arbitrator's award does not 'draw its essence from the collective bargaining agreement' and the arbitrator is dispensing 'his own brand of industrial justice'; (2) when the arbitrator exceeds the boundaries of the issues submitted to him; and (3) when the award is contrary to public policy." *Van Waters*, 913 F.2d at 739 (quoting *Federated Dep't Stores v. United Foods & Com. Workers Union, Loc. 1442*, 901 F.2d 1494, 1496 (9th Cir. 1990)).

Here, on May 24, 2024, the LJAB issued a unanimous Decision in plaintiff's favor and determined that defendant owed plaintiff a total of $93,754.48 in damages, plus interest of nine percent per annum. To date, defendant has not paid the damages and interest award to plaintiff. Notwithstanding the fact that defendant did not move to vacate the LJAB Decision, there are no grounds for vacatur in this case. Defendant's argument that the LJAB lacked jurisdiction to adjudicate plaintiff's grievance is best construed as an argument that the LJAB exceeded the boundaries of the issues presented to it. However, defendant's position is unavailing for the reasons described above. Moreover, the LJAB Decision "drew its essence" from the CBA. Based on the CBA and evidence presented, the LJAB determined that the CBA continued to bind the parties at the time of plaintiff's grievance, that plaintiff's grievance was timely and properly before the LJAB, and that defendant breached certain provisions of the CBA by employing non-union

workers and refusing to hire union members or enforce the Union Security Clause. Nothing in the LJAB Decision suggests that the LJAB's interpretation "ignore[d] the plain language of the [CBA]" or "'manifestly disregard[ed]' the contours of the agreement." *Stead Motors of Walnut Creek v. Auto. Machinists Lodge 1173*, 886 F.2d 1200, 1205 n.6 (9th Cir. 1989). Finally, there is no indication that the LJAB Decision is contrary to public policy. Because the LJAB construed the CBA and acted within the scope of its authority, the Court must confirm the LJAB Decision.

## CONCLUSION

For the foregoing reasons, plaintiff's Motion for Judgment on the Pleadings, ECF [12], is GRANTED. Plaintiff's Petition, ECF [1], is GRANTED, and the arbitration award is CONFIRMED. Plaintiff is ORDERED to file a proposed form of judgment based on the terms as found by the arbitrator within fourteen (14) days of this Order.

IT IS SO ORDERED.

DATED this 11th day of June, 2025.

Adrienne Nelson
United States District Judge